# ALFRED RICHARDS BRICK CO. v. TROTT.

---

EQUITY PRACTICE; AMENDMENT; MECHANICS' LIENS.

1. Where a defendant in an equity suit intends to rely upon defenses developed in the testimony, but not distinctly made an issue in the pleadings, he should amend his answer.

2. In this District a single mechanics' lien should cover no more than a single building except in a case where there are two or more buildings joined together and owned by a single person. (Construing District of Columbia Code, §§ 1237–1264.)

3. While two or more distinct and separate notices may be comprised in one single instrument of writing and may be enforced in one proceeding in equity where the parties are the same, two separate and distinct buildings or two separate and distinct groups of buildings cannot be treated as one and the same building for the purpose of the notice required to be given of mechanics' liens where there are other rights to be affected thereby than those of the principal contractor. (Construing District of Columbia Code, §§ 1237–1264.)

No. 1328.  Submitted February 3, 1904.  Decided March 1, 1904.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia in a suit in equity to enforce a mechanics' lien.        *Affirmed.*

The COURT in the opinion stated the case as follows:

This cause was before us nearly five years ago, and is reported in 16 App. D. C. 293. The decision then was merely upon a question of procedure, and did not involve the merits of the case.

The proceeding, which was instituted in the supreme court of the District, on January 18, 1895, by the Alfred Richards Brick Company, the appellant here, as complainant, is a suit in equity to enforce a mechanics' lien for bricks supplied by the complainant to the defendant, Charles V. Trott, for use in the construction of certain houses on lots numbered from 135 to 142, both inclusive, in a subdivision of lots in square 555, in this city. It appears from the record that on April 2, 1893, the appellee, Trott, who seems then to have owned all these lots and who was apparently a builder and contractor and somewhat of a speculator, procured from the authorities of the District a permit to construct five two-story brick buildings on lots Nos. 135 to 139, both inclusive, fronting on a street designated as Kirby street; and that about three weeks afterward, on April 21,

1893, he procured another similar permit for the construction of three two-story brick buildings on the lots Nos. 140 to 142, both inclusive, which fronted on a street designated as Morgan street, running at right angles to Kirby street. The five houses on Kirby street were the first begun and the first finished. They seem to have been completed on October 7 or October 8, 1893. The three houses on Morgan street were not finished until after January 27, 1894. The bricks, which constitute the subject-matter of lien, appear to have been supplied indiscriminately to both clusters of houses, without reference to any specific amount for use in either. The three houses on Morgan street, however, appear to have been as much as 50 per cent more valuable severally than the five houses on Kirby street, each of the latter being of the value of about $2,600, while each of the former is stated to have been of the value of about $4,000. The bricks, however, were all supplied during the period of about four months, from May 23, 1893, to September 27, 1893, and before the completion of the cluster of five houses on Kirby street. The two clusters were not continuous, although the rear of the lots on Morgan street adjoined lot 139 on Kirby street. In fact, they seem to have been separated by an alley.

In the interval between the completion of the cluster of five buildings and the other cluster, Trott failed in business or became embarrassed, and another contractor assumed to finish the cluster of three houses on Morgan street.

On September 7, 1893, when the cluster of five houses on Kirby street was approaching completion, Samuel E. Rabbitt, one of the original defendants in this cause, but who has died since the institution of this suit and who has been succeeded in the cause by his legal representatives, and who was the master plasterer for all the plastering work in all the houses, received from Trott, for a consideration which is not questioned, a deed of conveyance of lot No. 135, with the building thereon, which was the farthest removed from the Morgan street houses and the farthest north of the cluster of five buildings on Kirby street.

By two deeds, dated January 22, 1894, and January 31, 1894, respectively, Trott conveyed all the remaining seven lots,

with the buildings thereon, to one Charles H. Utermehle. All these conveyances, of course, were necessarily subject to any valid liens against the property by subcontractors and material-men.

On January 23, 1894, the present appellant, the Alfred Richards Brick Company, filed its notice of mechanics' lien against all eight of the lots, with the buildings thereon, for the value of the bricks supplied to all the buildings as one job for the sum of $1,717.97, under a contract with Trott. Under date of December 1, 1894, a credit of $1,503.22, which was seven eighths of the claim, was given upon it as having been paid by Utermehle in his purchase of the lots from No. 136 to No. 142, both inclusive, which left due upon the claim one eighth of it, or the sum of $214.75. The seven lots sold to Utermehle were thereupon released from the lien, and the present proceedings were instituted to enforce the balance ($214.75) against lot No. 135 in the hands of Samuel E. Rabbitt.

In the course of the testimony in the case it was developed that on November 1, 1893, after the completion of the Kirby street houses, the brick company took from Trott his promissory note of that date, payable ninety days thereafter, for the sum of $2,715.84, which is conceded to include the sum of $1,717.97, claimed under the lien; and that this note was discounted in bank for the benefit of the brick company, but that Trott never paid it, and that it was subsequently taken up by the brick company. There was also testimony tending to show the amount of brick which went into the house on lot No. 135, from which a calculation has been made by the appellant to show that it was of the value of about $234, or something more than the amount actually claimed in these proceedings.

The court below dismissed the bill of complaint, and from the decree of dismissal the complainant has appealed.

*Mr. W. C. Prentiss* for the appellant:

The answer attempts to put in issue only: First, the elements of the complainant's claim as the basis of a right of lien;

second, the time when the house on lot 135 was completed; and, third, the relative value of the houses in the two classes and the amount of brick which went into the house on lot 135; and sets up, by way of defense, conclusions of law: First, that the notice of lien was filed too late; second, that, if the claim is apportionable, only the price of the actual amount of brick that went into the house on lot 135 can be recovered; and, third, that if the claim is not apportionable the acceptance of seven eighths of the total amount and release of seven of the houses was a release of the remaining house. The last of these propositions is presented on the face of the bill and raised by the demurrer in the answer, was properly before this court on the previous appeal, and, by the decision reversing the dismissal below, was necessarily overruled. We then cited: *Hall* v. *Sheehan,* 69 N. Y. 618; *McAuley* v. *Meldrim,* 1 Daly, 400; *Paine* v. *Bonney,* 4 E. D. Smith, 750. See, also, *Powell* v. *Nolan,* 67 Pac. 712. Three of the houses were completed after January 27, 1894, so that it is immaterial that the house on lot 135 may have been completed sooner, for the whole row is to be treated as one building. Abert's Comp. § 6, p. 367; *Phillips* v. *Gilbert,* 101 U. S. 723; *Wall* v. *Robinson,* 115 Mass. 429; *Batchelder* v. *Rand,* 117 Mass. 176; *Brabazon* v. *Allen,* 41 Conn. 361; *Marston* v. *Kenyon,* 44 Conn. 349; *Peck* v. *Standart,* 1 Ill. App. 228. Rabbitt himself filed a notice of lien on January 27, 1894, against all the lots but the one he had purchased and in his answer avers that "the said eight houses were joined together and owned by the same person;" the witnesses speak of the eight houses as one job; the property was a corner lot 44 by about 100 feet subdivided into eight lots with a house on each, three on one street and five on the other, with an alleyway between, 5 or 6 feet wide; and on the complainant's books the account was designated as "Kirby street, N. W., third job." In such case the amount properly chargeable to the remaining lot should be decreed. *Brick Co.* v. *Spilman,* 76 Md. 337; *Pennock* v. *Hoover,* 5 Rawle, 291; *Doolittle* v. *Plentz,* 16 Neb. 153. Cowell measured and estimated the actual quantity of brick in the house in question as 2,400 or 2,500 selectred and 27,200 rough

(one half red, one fourth arch, and one fourth salmon), which at the contract prices aggregate $234, while the balance claimed is only $214.75, so that any question as to the amount recoverable is eliminated. Considerable testimony was brought out by the defense as to a certain note drawn by Trott and discounted by the complainant at the Citizens' National Bank, and was no doubt relevant to the issue as to whether the balance claimed remained due and unpaid; but there is nothing in the record tending to show that the note was taken in payment or satisfaction of the account. 22 Enc. Law, 2d ed. 555.

*Mr. Daniel O'C. Callaghan* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

We are not advised by any opinion in the record or otherwise upon what ground the decree of the court below is based. But in the argument before us three several and distinct grounds are advanced on behalf of the appellee to defeat the complainant's claim, although not all of them are raised by the answer of the defendant. These are: (1) That the notice of lien was not filed within three months after the completion of the building or buildings affected by it, as required by the law; (2) that the lien was released by the company by its acceptance of the Trott note for $2,715.84, even though that note was not ultimately paid by Trott; and (3) that, even if the lien was not discharged by the taking of that note, it could properly be satisfied only by a sale of the lots in the inverse order of alienation; and that, as the bill was framed exclusively against lot No. 135, and as the other lots, even if they had not been released by the acceptance of a proportionate share of the amount of the lien from them, were not covered by the bill of complaint, the suit could not be maintained at all. Only the first of these is distinctly made an issue in the pleadings. The others seem only to have been developed in the testimony; and it would have been proper, if the defense intended to rely upon them, that they should have been set forth in some amendment to the

answer. However, we do not think that it is necessary to rely upon them here. The case can be determined upon the issue raised by the answer, that the notice of lien was not filed within the time required by law.

The mechanics' lien law of the District of Columbia, now incorporated into the Code as sections 1237 to 1264, inclusive, provides for the allowance to contractors, subcontractors, and materialmen of a lien, to be enforced by a bill in equity, for the value of the work and materials furnished by them for the construction, improvement, or repair of any building; and subjects both the building and the ground on which it is erected to the satisfaction of the lien, upon condition that the person desiring to avail himself of such right of lien shall, during the construction or within three months after the completion of the building, file a notice of his intention to hold such lien, and shall commence suit to enforce the same within one year after such notice filed, or within six months after the completion of the building. And one of the sections cited, namely, § 1250, provides that "in case of labor done or materials furnished for the erection or repair of two or more buildings joined together and owned by the same person or persons, it shall not be necessary to determine the amount of work done or materials furnished for each separate building, but only the aggregate amount upon all the buildings so joined; and the decree may be for the sale of all the buildings and the land upon which they are erected as one building, or they may be sold separately, if it shall seem best to the court."

The uncontroverted testimony is to the effect that the five houses on Kirby street, against one of which and its lot it is now sought to maintain a lien, were completed on October 7 or October 8, 1893, and the lien was not filed until January 23, 1894. This was too late by more than two weeks; and consequently the lien was lost by the delay. It is curious to note, as part of the system of delay that seems to have characterized the whole proceeding, that almost the whole year allowed by the statute, only wanting five days, was permitted to elapse before suit was commenced to enforce the claim of lien.

To obviate the fatal difficulty resulting from the delay in filing the notice of lien, the appellant is compelled to resort to the theory that the five houses on Kirby street and the three houses on Morgan street are to be treated as one job, notwithstanding that the two groups of houses were distinct and separated from each other by an alley about 5 or 6 feet wide; and that, as the three houses on Morgan street were not completed until after the notice of lien was filed, that notice was in ample time to bind all the houses and the whole property; and in support of this theory he refers to the defendant Rabbitt's answer in the case wherein he stated that "the said eight houses were joined together and owned by the same person," to the fact that the defendant himself, on January 27, 1894, had filed a single notice of lien on all the eight houses, excepting the one previously conveyed to himself; to the testimony of two of the witnesses for the complainant who spoke of all the houses as one job; to the fact that the whole property was originally one corner lot, 44 feet by 100 feet; and, finally, to the fact that the account on complainant's books was designated as "Kirby street N. W., third job."

But it is conceded that the defendant Rabbitt was mistaken in his statement, and that the two groups of houses were separate and distinct, and not in any manner joined together, and the other circumstances stated are in the testimony very plainly subject to qualification that render them of little importance in this connection. The important fact is that the defendant Trott, who contracted with the brick company for the bricks, and who, if any one, knew whether the whole affair was one job or not, but who was not called as a witness by either side, distinctly by his action regarded the two enterprises as entirely separate and distinct, for, as already stated, he applied for two distinct and separate permits to build at two separate and different times, and the work upon one group of houses was rapidly hurried to completion, while the work upon the other group was for some reason delayed.

With regard to the right to maintain a single lien on distinct buildings erected on separate lots of ground, there seems to be

considerable variance between the several mechanics' lien laws of the several States of our Union, and similar variance in the adjudicated cases on the subject. An excellent summary is to be found in the American & English Encyclopædia of Law, 2d ed. vol. 20, pp. 286, 287, from which we quote the following paragraphs:

"As a general rule, the statutes allow a person who has under a single contract performed labor in or furnished material for the erection of several distinct buildings on separate lots, to acquire a single lien for the entire amount due, upon all the buildings and lots, though in a few jurisdictions this right is denied, except where the lots are so connected by their use as to have become practically one and the same. . . .

"In some States it is considered that a single lien can be acquired only when the lots are contiguous; in others the view has been taken that it is not so much the location of the premises as the contract of the parties that determines whether the lien must be joint or several; and hence a single lien has been held to be maintainable, although the lots were separated by a street; and in one State a single lien has been maintained against two tracts separated from each other by the space of an intervening city block or more."

As is apparent from the sections hereinbefore cited, our Code has adopted the principle that a single lien should cover no more than a single building, except in the case where there are two or more buildings joined together and owned by the same person; for the provision that in this case it shall not be necessary to determine the amount of labor done or materials furnished for each separate building and that a decree might be rendered for the sale of all of them as one building—in other words, that a single lien might be maintained against all the buildings as one—necessarily implies that in all other cases it shall be necessary to file single liens against each separate building. It is a case where the rule applies, *Expressio unius est exclusio alterius.* And indeed, the first section cited, § 1237, by its express terms confines each single lien to a single building. Section 1250, which authorizes a single lien on two or

more buildings joined together, is merely an enlargement of the general provision for that special contingency.

The case of *Phillips* v. *Gilbert,* 101 U. S. 721, 25 L. ed. 833, is not antagonistic to what we here hold. That case arose under the old mechanics' lien law of this District, which contained nothing analogous to § 1250 of the present Code. But the Supreme Court of the United States, notwithstanding this, held that one single lien could be maintained for a whole row of houses joined together, because the claim arose under one entire contract and related to the row as an entirety.

Similar to the holding of the Supreme Court of the United States in the case of *Phillips* v. *Gilbert,* was that of the court of appeals of the State of Maryland in the case of *McLaughlin* v. *Reinhart,* 54 Md. 71, and in the case of *Maryland Brick Co.* v. *Spilman,* 76 Md. 337, 17 L. R. A. 599, 35 Am. St. Rep. 431, 25 Atl. 297, and also that of the supreme court of Texas in the case of *Lyon* v. *Logan,* 68 Tex. 525, 2 Am. St. Rep. 511, 5 S. W. 72. In this last-mentioned case it was said by the court:

"When materials have been furnished under a single contract for buildings erected on two or more contiguous lots, owned by the person to whom the material is furnished, we see no reason why the lien should not attach to all the lots; and it would be exceedingly unreasonable to require the person who furnishes material in such a case to ascertain how much of the material is placed in each house. . . . So long as he [the owner] treats such lots as one property by making one contract for material to be used on all of them, without designating what part of the material is to be used on one lot or another, so long may the materialman treat the lots as one piece of property in fixing his lien upon it."

It is this principle of law and sound reason thus enunciated in the case of *Phillips* v. *Gilbert* and the other cases cited that has been embodied in statutory form in the Code as § 1250. But it is not apparent that under this rule of law or statutory enactment a wider scope is to be given under our Code for the inclusion of distinct and separate pieces of property under one

lien.   The statute and the adjudications alike restrict the right of combination in one single lien to contiguous property.

It has already been noticed that Trott, the owner of the property and the principal contractor, did not treat the whole property as one piece in his dealings with the authorities of the District for permits to build.  He treated the Morgan street lots as distinct and separate from the Kirby street lots, and procured separate permits for each.   And it is a peculiar fact, also, that the appellant's books of account refer wholly to the "Kirby street job," and nowhere to any houses on Morgan street; nor do its witnesses anywhere refer, except perhaps by indirection, to any houses on Morgan street, or to any materials supplied to such houses.   It is left to conjecture to infer that by the Kirby street job was meant also the construction of three houses on Morgan street.  It behooved the appellant, as well as all other persons dealing with the property, to take reasonable notice of the situation; nor was it impossible or difficult so to do.   It was not incumbent on it to keep itself informed as to the amount of bricks which went into each house.   But when two different rows of houses under two different permits were in course of construction, although not far removed from each other, it is not an unreasonable requirement that it should guard its interests sufficiently to ascertain how much it was contributing to each row.   Certainly if the two rows of houses, although belonging to one man, were situated in widely separated portions of the city, the requirement would be most just that it should keep an account with each; and it cannot dispense with the requirement that the rows happen to be adjacent.

Illustration of the propriety of this position will readily appear when we consider the rights of subsequent purchasers. This Kirby street row of houses, it will be recalled, was completed on or before October 8, 1893.   Suppose that on the 10th of January, 1894, or at any time afterward, they were offered for sale, and were actually purchased by various purchasers, who knew nothing of any dealings of the owner Trott with the brick company.   Upon searching the records, they would find no notice of lien filed; and they would purchase in good faith.

Would it ever occur to any of them in the ordinary course of business that this row of houses was in some way connected with the row of houses around the corner on another street, so that when this latter row was finished, which might not be for weeks, or months, or possibly even years thereafter, a lien might be placed upon that row which would affect the row in which they were interested or which they desired to purchase? The very question shows the preposterous nature of the proposition that one group may be made to wait upon another so as that both might be covered by one and the same lien. The condition, of course, is very different from that of the completion of one or more of several houses in the same row; for in this latter case the situation and the letter of the law both give notice of the combination and of the possibility of a single lien to affect all the houses equally. And it may be, also, that two or more groups of houses may be held under one lien against all, as against the owner alone, when there are no others interested.

It seems to us, therefore, to be very clear under our law that one who has contributed labor or materials to the erection of two or more separate houses, or of two or more separate groups of houses, and who seeks to hold a lien thereon for such labor or materials, is not entitled in his proceedings so to combine the construction of all as to maintain one single lien against all. If one building, or one group of buildings, has been finished, he is not entitled to withhold his notice of lien thereon until the other building, or the other group of buildings, has been completed, and to make the date of the later completion the time on which his lien for the earlier completion is to be based. Each must stand by itself.

Of course, by anything that has here been said, we are not to be understood as intimating that two or more distinct and separate notices of lien may not be comprised in one single instrument of writing or that two or more notices of lien may not be enforced in one and the same proceeding in equity where the parties may be the same. What we hold here is that two separate and distinct buildings, or two separate and distinct groups of buildings, may not be treated as one and the same building

for the purpose of the notice required to be given of mechanics' liens where there are other rights to be affected thereby than those of the principal contractor.

Being of the opinion in this case, that as to the group of houses on Kirby street there was no notice of lien filed within three months after its completion, and that the notice filed on. January 24, 1894, was not in due time as required by law, the cause must be determined against the appellant on this ground alone, without reference to either of the other questions raised.

The judgment appealed from will be affirmed, with costs; and it is so ordered. *Affirmed.*